UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DOUG MATCHETT and MARY KAROL MATCHETT,
                              Plaintiffs,

v.                                              Case # 24-CV-6001-FPG

                                                                DECISION AND ORDER

TOWN OF BRIGHTON and MONROE COUNTY,
                              Defendants.
_____

## INTRODUCTION

      Plaintiffs, Doug Matchett and Mary Karoll Matchett ("Plaintiffs"), bring this action against Defendants, Town of Brighton ("Town") and Monroe County ("County" and collectively, "Defendants"), alleging violations of Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and the New York State Human Rights Law ("NYSHRL"). ECF No. 9. Plaintiffs are deaf and allege that Defendants failed to provide an American Sign Language ("ASL") interpreter for certain police interactions that took place in 2021. *Id.* Plaintiffs are seeking damages, a declaratory judgment, and an injunction. *Id.* at 22-24. Currently pending before this Court is the County's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 15. For the following reasons, the claims against the County are DISMISSED WITHOUT PREJUDICE.

## FACTS[1]

      Mr. Matchett and Ms. Matchett are deaf, and their son, Scott, was also deaf prior to his death. Although the parties have some ability to lip read, ASL is their primary language. ECF No. 9 ¶¶ 20-24. On February 24th, 2021, Ms. Matchett called 911, asking for mental health crisis assistance for Scott. *Id.* ¶ 43-44. Ms. Matchett informed the dispatcher that her family was deaf

---

[1] The facts summarized in this section are taken from Plaintiffs' complaint and assumed to be true at this stage.

and needed an ASL interpreter. *Id.* When the police arrived without an ASL interpreter, Ms. Matchett repeated her request, but was told that an interpreter was not available. *Id.* ¶¶ 45-46, 50-51. Ms. Matchett proceeded to communicate with the police using an iPad. *Id.* ¶ 53. She tried to convince the police that her son needed to be hospitalized because of the "symptoms of psychosis" that she observed. *Id.* ¶ 65. The police also communicated with her son via the iPad. *Id.* ¶ 56. They asked him if he was having suicidal thoughts and he responded that he was being forced to take medicine. *Id.* Despite Plaintiffs' insistence, the police determined that Scott did not qualify for hospitalization at that time. *Id.* ¶ 67.

On April 7, 2021, Scott was experiencing another mental health crisis and called 911 himself. *Id.* ¶ 72. He informed the dispatcher of the need for an interpreter. *Id.* ¶ 73. One of the responding police officers had limited sign language ability. *Id.* ¶ 78. The police observed the property damage Scott caused in his mental state and ultimately determined to arrest Scott and take him to Strong Memorial Hospital for a mental health evaluation. *Id.* ¶¶ 75, 86.

On April 9, 2021, Mr. and Ms. Matchett went to the Brighton Police Department to request that interpreters be provided for future calls to their house. *Id.* ¶¶ 89-90. They also wanted an incident report regarding the events that took place on April 7 for insurance purposes. *Id.* They were told that they could not receive the requested report. No interpreter was provided during this meeting. *Id.* ¶ 92.

On August 19, 2021, Ms. Matchett called the police again to report that Scott had committed suicide. *Id.* ¶ 95. The police arrived at the house to conduct an investigation. *Id.* ¶ 96. One of the officers had limited sign language ability and another was the designated deaf liaison. *Id.* ¶¶ 97, 110. Ms. Matchett requested an interpreter from one of the police. *Id.* ¶¶ 101-02. An ASL interpreter was eventually secured, but "most investigators and emergency personnel ha[d] already

left," which limited "Plaintiffs' opportunity to ask questions and understand fully what had just transpired." *Id.* ¶ 102, 109. Plaintiffs allege that they did not understand everything that happened in the investigation. *Id.* ¶ 114. Because of these interactions, "Plaintiffs suffered greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress." *Id.* ¶ 115.

Plaintiffs bring claims under the ADA, the Rehabilitation Act and NYSHRL because of Defendants' alleged failure to ensure effective communication during their interactions.

## STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). However, the Court is not required to credit legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681, 686 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [her] claims . . . across the line from conceivable to plausible," the complaint must be dismissed. *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

The Second Circuit has concluded that Title II of the ADA, the Rehabilitation Act, and the New York State Human Rights Law are "generally equivalent," because they each prohibit

discrimination against disabled individuals. *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015). As a as a result, when claims are brought under each of these statues, the practice in this circuit is to "analyze such claims together." *Id.*

To state a claim under of the ADA, Rehabilitation Act or NYSHRL, a plaintiff must allege "(1) that she is a 'qualified individual' with a disability; (2) that the defendants are subject to one of the Acts; and (3) that she was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of her disability." *Id.* "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks and citation omitted); *see also Davis v. Shah*, 821 F.3d 231, 260 (2d Cir. 2016). Plaintiffs do not allege intentional discrimination, nor do they allege disparate impact. Plaintiffs only allege a failure to make reasonable accommodation but have failed to do so sufficiently against the County.

"Generally, a request for an accommodation is a prerequisite to liability for failure to accommodate as it prevents a party from keeping their disability a secret and suing later for failure to accommodate." *Dimperio v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:13-CV-1010, 2015 WL 1383831, at *6 (N.D.N.Y. Mar. 25, 2015); s*ee also Rivera v. Apple Indus. Corp.*, 148 F. Supp. 2d 202, 215 (E.D.N.Y. 2001) (dismissing failure to accommodate claims as a matter of law because plaintiff failed to show that he made a request for an accommodation). Here, Plaintiffs have failed to allege that they made any request for an accommodation to the County.

The only allegations in Plaintiffs' complaint relating to the County are as follows:

> 104. BPD officers, investigators, a forensics specialist, representatives from the Department of Human Services Office of Mental Health, Monroe County, and

>    the Monroe County Office of the Medical Examiner began questioning the Plaintiffs without an interpreter present.
>        105. The questioning covered Scott's suicide, including inquiries about his medication, with the majority conducted without an interpreter.
>        106. Communication relied primarily on lipreading and limited spoken English, proving wholly inadequate during this critical period.
>        107. The absence of an ASL interpreter hindered the Matchetts' ability to understand the ongoing investigation during this visit and the communications related to this investigation.

ECF No. 9 ¶¶ 104-09.

The mere fact that employees of the County "began questioning the Plaintiffs without an interpreter present" does not plausibly allege that the County failed to accommodate Plaintiffs because Plaintiffs do not allege that they made a request to the County that the County denied.

In rebuttal, Plaintiffs argue that the County failed to accommodate their disability because "the Matchetts clearly pled that they repeatedly requested interpreters from the Brighton Police Department." ECF No. 22 at 7. Certainly, Plaintiffs complaint is filled with allegations of requests for an ASL interpreter to the police. *See* ECF No. 9 ¶ 45-46 ("Two Brighton Police Department (BPD) officers . . . responded to the call. Neither officer was versed in sign language, nor did they bring an ASL interpreter."); *id.* ¶ 49 ("Ms. Matchett asked Officer Labrera about the ASL interpreter."); *id.* ¶ 50 ("Ms. Matchett repeated her request for an ASL interpreter to Officer Labrera."); *id.* ¶ 77 ("The BPD officers did not bring the requested ASL interpreter"); *id.* ¶ 82 ("Ms. Matchett pointed out the lack of an ASL interpreter to Officer Bills"); *id.* ¶ 83 ("Ms. Matchett's request for an ASL interpreter was met with Officer Bills"); *id.* ¶ 90 ("The Plaintiffs again asked for the BPD to provide interpreters"); *id.* ¶ 98 ("Ms. Matchett, limited in communication, again asked for an ASL interpreter from Officer Bills"). None of these allegations involves the County.

Plaintiffs instead argue that the County is responsible for the police and therefore should be held accountable for the requests that they made directly to the police and not the County. This

fails as a matter of law because the County is not responsible for the Brighton Police Department. Under New York law, "[t]he power to establish a town police department . . . is vested only in the town board of any town."  1976, Op. Atty. Gen. (Inf.) 166.; *see also* N.Y. Town Law § 150 ("The town board of any town may establish a police department . . ."). The Town of Brighton, a municipal entity that is separate and independent from the County, is therefore, the sole entity with the power to establish, maintain, and exercise authority over its police department.

Plaintiffs argue in rebuttal that the County is responsible for the Brighton Police Department because the County maintains a center to train the Brighton Police Department and pays for the training. *See* ECF No. 22 at 2; see also Monroe County Public Safety Training Facility (PSTF), https://www.monroecounty.gov/safety-pstf (accessed Mar. 4, 2024) (stating that the County maintains a contract "for all public safety training to be conducted at [a] Public Safety Training Center"; 2019 Monroe County Shared Services Plan, https://www.monroecounty.gov/files/executive/2019-shared-services-plan.pdf (accessed Feb. 28, 2024) (referencing Item 6 on page 4 of the PDF) (stating that "[a]ll police training is paid for by the County").

However, these arguments are unavailing because "[w]here a town or village uses a training program operated by a community college and funded in part by the county to train its police officers, the town or village still retains complete authority and control over these officers when they are in the performance of their duties." Op. State Compt. 81-322. The alleged instances of the police failing to accommodate Plaintiffs' disability arose while the police were performing their duties. The Town, therefore, retains complete authority over that conduct and it is not imputable to the County.

Accordingly, because Plaintiffs have failed to plausibly alleged that they made a request to the County that the County denied, their claims must be dismissed. The Court dismisses the claims without prejudice to filing an amended complaint, should Plaintiffs wish to file one.

## CONCLUSION

For the foregoing reasons, the County's motion to dismiss the Amended Complaint, ECF No. 15, is GRANTED. Plaintiffs' claims against the County are DISMISSED WITHOUT PREJUDICE. Plaintiffs may replead their claims against the County no later than June 18, 2024. If Plaintiffs do not replead their claims against the County by that date, the claims against the County shall be dismissed with prejudice.

IT IS SO ORDERED.
Dated: May 24, 2024
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York