UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOUG MATCHETT, et al.,

                              Plaintiffs,

v.                                                         Case # 24-CV-6001-FPG

                                                           DECISION AND ORDER

BRIGHTON POLICE DEPARTMENT, et al.,

                              Defendants.

## INTRODUCTION

Plaintiffs Doug and Mary Karol Matchett have filed a second amended complaint against Defendants Town of Brighton and Monroe County. ECF No. 32. Defendants move to dismiss the amended complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 24, 33, 35. For the reasons that follow, the County's motion to dismiss is DENIED, and the Town's motion to dismiss is GRANTED IN PART and DENIED IN PART,

## LEGAL STANDARD

A complaint will survive a motion to dismiss under Rule 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual

allegations . . . a presumption of truthfulness." *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

## BACKGROUND

The following facts are taken from the second amended complaint, unless otherwise noted. Plaintiffs are "deaf individuals who rely on American Sign Language (ASL) to communicate." ECF No. 32 ¶ 1. Their son, Scott Matchett, was also deaf and had mental impairments of autism spectrum disorder, major depressive disorder, and generalized anxiety disorder.[1]  *Id.* ¶¶ 1, 26.

The events underlying this action took place in 2021. Plaintiffs' son was 29 and lived with Plaintiffs during this period. On February 24, 2021, Plaintiffs' son began exhibiting extreme distress, destructive behavior, and suicidal ideation. *Id.* ¶ 43. Concerned for his wellbeing, Mary Karol called 911, requested mental health crisis assistance, and, noting that the family "is deaf," requested an ASL interpreter. *Id.* ¶ 44.

Two police officers with the Brighton Police Department arrived on scene. One of the officers was "Officer Labrera." *Id.* ¶ 45. The officers were not "versed in sign language," and they did not bring any "effective communication" mechanism, like an "ASL interpreter" or "Video Remote Interpreting device ("VRI")." *Id.* ¶ 46. VRI is "an interpreting service that uses real-time, full-motion video and audio over a high-speed internet connection to permit a live ASL interpreter to communicate . . . through a portable screen from a remote location." *Bax v. Doctors Med. Ctr. of Modesto, Inc.*, 52 F.4th 858, 863-64 (9th Cir. 2022). When Mary Karol reiterated her request for an ASL interpreter, Officer Labrera responded that "no interpreters were available." ECF No. 32 ¶ 51. Plaintiffs allege that this statement was false, insofar as Rochester has "one of the largest Deaf communities in the country" and has "a large population of in-person sign

---

[1] For ease of reference, the Court refers to the Matchetts by their first names.

language interpreters who are generally available on short notice." *Id.* ¶ 48. Plaintiffs suspect that, in fact, police "made no attempts" to "secure an interpreter." *Id.* ¶ 52.

Mary Karol was compelled to use an iPad to communicate with the officers. This was ineffective, however. For example, when police asked Scott about his suicidal thoughts, he responded "irrelevantly about being forced to take medicine, with no follow-up questions asked." *Id.* ¶ 57. Seeking to have Scott hospitalized, Plaintiffs attempted to convey Scott's "expressed death wish and discontinuation of essential psychiatric medication," as well as his "delusions, aggression, and property damage," but Plaintiffs were "uncertain if the officers fully understood the severity of this vital information." *Id.* ¶¶ 59, 60, 63. After an hour, the officers left, advising Scott to "calm down" and "not break things," but declining to offer any "further help or resources." *Id.* ¶ 70.

In April 2021, Scott called 911 in severe psychological distress while he was alone at home. He sought assistance for his mental health crisis and requested an ASL interpreter. Police with the Brighton Police Department were dispatched. They did not bring an ASL interpreter or a VRI device. One officer, Spencer Bills, had limited sign language ability, but was unable to effectively communicate with Scott or with Plaintiffs, when they arrived home during the incident. Mary Karol again requested an ASL interpreter, but Officer Bills indicated that none were available. Ultimately, police arrested Scott and transported him to Strong Memorial Hospital for a mental health evaluation. Plaintiffs alleged that, because police could not effectively communicate their intentions to Scott, the arrest caused Scott "unnecessary confusion and fear." *Id.* ¶ 87. A few days after the incident, Plaintiffs met with Officer Bills and requested that an ASL interpreter be provided during future 911 calls.

On August 19, 2021, Mary Karol notified the Brighton Police Department that Scott had committed suicide. Officer Bills and Officer Labrera were among the Brighton police officers who responded to Plaintiffs' home. Mary Karol asked Officer Bills for an ASL interpreter; Officer Bills responded that none were available. Mary Karol insisted that an interpreter be secured. An unnamed officer relented and obtained one, though the interpreter did not arrive until "most investigators and emergency personnel had already left the scene." ECF No. 32 ¶ 102.

In the meantime, "BPD officers, investigators, a forensic specialist, representatives from the Department of Human Services Office of Mental Health, Monroe County, and the Monroe County Office of the Medical Examiner began questioning [] Plaintiffs." *Id.* ¶ 104. These questions delved into Scott's medication and suicide. Absent an interpreter, communication was difficult. Plaintiffs relied "primarily on lipreading and limited spoken English." *Id.* ¶ 106. Plaintiffs were unable to glean the results of the investigation or ask meaningful questions. In particular, Plaintiffs state that they had difficulty communicating with a representative from the medical examiner's office; a member of the Office of Mental Health's Forensics Intervention Team; and the Brighton Police Department's deaf liaison. *See id.* ¶¶ 110-22.

Plaintiffs filed this action in January 2024. In their second amended complaint, Plaintiffs raise claims under the Americans with Disabilities Act ("ADA"), Rehabilitation Act, and New York State Human Rights Law ("NYSHRL").

## DISCUSSION

**I.   Monroe County**

The County argues that Plaintiffs' claims against it must be dismissed because there is no allegation that Plaintiffs made a request for an accommodation to any of its employees or agents. ECF No. 33-5.

4

"The legal standards and analysis for claims under the Rehabilitation Act, the ADA, and the [NYSHRL] are the same." *Doall v. N.Y.S. Unified Ct. Sys.*, No. 23-CV-364, 2024 WL 3302376, at *7 (E.D.N.Y. July 2, 2024). In its prior Decision & Order, the Court observed that, "[g]enerally, a request for an accommodation is a prerequisite to liability for failure to accommodate" under those three statutes. ECF No. 31 at 4. Yet, this general rule is subject to an important exception: even without a request, a public entity has a duty to reasonably accommodate a disability "if the disability is obvious"—that is, if the entity "knew or reasonably should have known that the [plaintiff] was disabled."[2] *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008). Although *Brady* was a case involving employment discrimination, courts have applied the exception to discrimination by public entities as well. *See, e.g.*, *Bax*, 52 F.4th at 869 ("It is axiomatic that an entity's duty to look into and provide a reasonable accommodation may be triggered when the need for accommodation is obvious, even if no request has been made." (internal quotation marks omitted)); *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1196-98 (10th Cir. 2007) (collecting cases); *Sage v. City of Winooski*, No. 16-CV-116, 2017 WL 1100882, at *4 (D. Vt. Mar. 22, 2017) (applying exception to claim under Title II of the ADA, where plaintiff alleged a failure to accommodate in connection with his arrest); *see also McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 n.2 (2d Cir. 2012) (noting that courts "look for guidance to case law under title I of the ADA" when assessing claims under Title II of the ADA).

In this case, Plaintiffs allege that they are deaf and that, during their conversations with the County employees from the Office of the Medical Examiner and Office of Mental Health, the difficulties that they had communicating were obvious. *See* ECF No. 32 ¶¶ 110-19. They state,

---

[2] The County reads the Court's prior Decision & Order to reject the applicability of this exception. *See* ECF No. 33-5 at 10. The Court's prior ruling was not so broad, but was instead focused on the sufficiency of Plaintiffs' allegations. *See* ECF No. 31 at 4-6.

for example, that Mary Karol had to ask the representative from the county medical examiner's office to repeat himself "[m]ultiple times" because she could not understand him. *Id.* ¶ 111. Similarly, the member from the County's Office of Mental Health—who knew some ASL signs—tried and failed to adequately communicate with Plaintiffs. *See id.* ¶¶ 116-17. These facts are sufficient to plausibly allege that Plaintiffs' need for an accommodation was obvious, which triggered the County's duties under the relevant statutes. *Accord Garcia v. City of Lubbock, Texas*, No. 21-11134, 2023 WL 4636896, at *11 (5th Cir. July 20, 2023) (summary order) ("[T]he officers' attempts to communicate critical rights to someone they understood to be deaf plainly violated the ADA."); *Robertson*, 500 F.3d at 1198 (concluding that the plaintiff presented a viable ADA claim, where officials knew he was deaf, which rendered his "need for an accommodation [] obvious when he attempted to use prison services necessarily involving aural communication").

Therefore, the County's arguments do not merit relief. The action will proceed against the County.[3]

## II. Town of Brighton

### a. Liability

The Town contends that Plaintiffs have failed to plausibly allege any claim of disability discrimination. ECF No. 24-1 at 13-20. The Court disagrees.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42

---

[3] Separately, with respect to Plaintiffs' allegations relating to the inadequacy of the 911 dispatch response, the County presents evidence to argue that it does not operate or control the 911 center. *See* ECF No. 33-5 at 10-11. Because the Court must accept Plaintiffs' allegations at that the County administers the dispatch system, ECF No. 32 ¶ 134, the Court may not entertain the County's contrary evidence. *See Cyber Apps World, Inc. v. EMA Fin., LLC*, 645 F. Supp. 3d 281, 289 (S.D.N.Y. 2022) ("[C]ourts cannot resolve factual disputes when deciding a 12(b)(6) motion.").

U.S.C. § 12132.  "In order to establish a prima facie violation under [the ADA], [the plaintiff] must show that 1) he is a qualified individual with a disability; 2) [the defendant] is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [the defendant's] services, programs, or activities or [the defendant] otherwise discriminated against him by reason of his disability."  *Wright v. N.Y.S. Dep't of Corrs.*, 831 F.3d 64, 72 (2d Cir. 2016).  The Town does not dispute the first two elements.  *See* ECF No. 24-1 at 14 n.4.

With respect to the third element, "a plaintiff may base a Title II claim on any of three theories of liability: disparate treatment (intentional discrimination), disparate impact, or failure to make a reasonable accommodation."  *Johnson v. N.Y.S. Police*, 659 F. Supp. 3d 237, 253 (N.D.N.Y. 2023) (internal brackets omitted).  Plaintiffs bring a claim for failure to accommodate.[4]  "In examining this claim, [a court] ask[s] whether a plaintiff with disabilities as a practical matter was denied meaningful access to services, programs or activities to which he or she was legally entitled."  *Wright*, 831 F.3d at 72 (internal quotation marks omitted).  "In order to assure

---

[4] Plaintiffs purport to bring a claim for disparate treatment, but it is clear from the papers that no such claim is alleged in substance.  *See* ECF No. 27 at 14-16.  Plaintiffs are not alleging that the Town "treated [them] differently and less favorably than other, non-disabled [citizens]," which would constitute disparate treatment.  *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1283 (7th Cir. 1996).  Plaintiffs are instead alleging that the Town "refused to affirmatively accommodate [their disabilities] where such accommodation was needed to provide meaningful access to a public service."  *Nunes v. Mass. Dep't of Corrs.*, 766 F.3d 136, 145 (1st Cir. 2014) (internal quotation marks omitted).  Indeed, Plaintiffs concede that the basis for their disparate-treatment theory is that they were "hindered" in receiving police services "by the Town's failure to properly accommodate them."  ECF No. 27 at 15.  Accordingly, Plaintiffs may not proceed on a disparate-treatment theory.

Plaintiffs also allege that the Town failed to train its officers.  *See* ECF No. 32 ¶ 168.  The Town interprets this allegation to mean that Plaintiffs are attempting to hold it liable for the mere failure to train its officers, separate and apart from any wrongful exclusion from its police services.  *See* ECF No. 24-1 at 19-20.  The Court does not read Plaintiffs' second amended complaint to raise such a claim.  Rather, Plaintiffs' allegation that the Town failed to train its officers is not a distinct theory of liability, but is part and parcel of its claim that the Town failed to provide reasonable accommodations.  The Second Circuit has held that an entity may be liable under the ADA if its failure to "train [its] employees how to deal with [the needs of] disabled individuals" results in the failure to furnish reasonable accommodations.  *Camarillo v. Carrols Corp.*, 518 F.3d 153, 157 (2d Cir. 2008).  So it is here: if the Town failed to properly train its officers, and if that failure undermined Plaintiffs' ability to make use of police services, then the Town may be held liable insofar as it has violated its responsibility to "take appropriate steps to ensure that communications with [] participants, members of the public, and companions with disabilities are as effective as communications with others."  28 C.F.R. § 35.160(a)(1).

7

meaningful access, reasonable accommodations in the programs or benefits may have to be made. The hallmark of a reasonable accommodation is effectiveness." *Id.* (internal quotation marks, citation, and brackets omitted).

The Town argues that Plaintiffs were not "depriv[ed]" of "access to police services," and that "lip reading, written communications, and ASL" was available to permit communication with police during each of the alleged incidents. ECF No. 24-1 at 17. The Court does not find this argument persuasive.

A plaintiff is not required to plead that he or she was "completely prevented from enjoying a service, program, or activity to establish discrimination under . . . Title II." *Disabled in Action v. Bd. of Elecs. in City of New York*, 752 F.3d 189, 198 (2d Cir. 2014) (internal quotation marks omitted). In this case, the relevant benefit is the opportunity to fully utilize the Town's police services. The Town does not dispute that such services would include both a family member's ability to express relevant public-safety information to police about the target of a police investigation, and his or her ability to receive information from police about said investigation. *Cf.* 28 C.F.R. § 35.160(a)(1) (requiring a public entity to "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others").

Here, Plaintiffs plausibly allege that in all of their interactions with the police, there were significant "communication barrier[s]" that prevented Plaintiffs from expressing themselves fully and, conversely, prevented Plaintiffs from understanding the police fully. ECF No. 32 ¶ 55. For example, during the February 2021 encounter, Plaintiffs had to communicate with police via an iPad, which hindered their ability to fully convey Scott's needs or their wishes. *See id.* ¶¶ 61, 62, 64, 65. While it may be true that Plaintiffs could not dictate officers' ultimate decision-making,

like any non-disabled parents, Plaintiffs were entitled to communicate what they perceived to be relevant information for the investigation into their son's needs so that police "could [] accurately assess the situation or provide effective emergency assistance." *Id.* ¶ 69.  Likewise, after Scott's suicide, Plaintiffs were compelled to rely on "lipreading and limited spoken English" in order to glean the information conveyed to them by the variety of Town and County officials involved in the investigation.  *See id.* ¶¶ 104-06.  This proved "wholly inadequate." *Id.* ¶ 106.  The Town does not dispute, and could not reasonably dispute, that non-disabled parents are ordinarily entitled to effective communication regarding the investigation into their son's suicide.

In short, the Second Circuit has squarely rejected the theory that a disabled individual's opportunity to participate in a public entity's services "at some time and in some way" is sufficient to meet the entity's obligations under the ADA.  *Disabled in Action*, 752 F.3d at 199 (observing that such a line of reasoning "would render meaningless the mandate that public entities may not afford persons with disabilities services that are not equal to that afforded others" (internal quotation marks and brackets omitted)); *see also* 28 C.F.R. § 35.130(b)(1)(iii) (prohibiting a public entity from providing a disabled individual "an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others").  Taking the allegations in the light most favorable to Plaintiffs, they have sufficiently alleged that they were "as a practical matter was denied meaningful access to services, programs or activities to which [they were] legally entitled." *Wright*, 831 F.3d at 72.  To the extent the Town disputes the alleged insufficiencies of the accommodations it did provide, that is a fact-sensitive issue better addressed after discovery.  *See Quadir v. N.Y.S. Dep't of Labor*, 39 F. Supp. 3d 528, 539 (S.D.N.Y. 2014).

9

Therefore, Plaintiffs have sufficiently alleged a claim for failure to accommodate under the ADA and, by extension, under the Rehabilitation Act and NYSHRL.  *See Doall*, 2024 WL 3302376, at *7.

### b. Deliberate Indifference

The Town next argues that Plaintiffs have failed to sufficiently alleged intentional discrimination that would entitle them to monetary relief under the ADA or Rehabilitation Act.  ECF No. 24-1 at 20-22.  The Court is not persuaded.

"[I]n order to recover damages under Title II the ADA and the RA, the plaintiff must show that the discrimination was intentional."  *Vassenelli v. State Univ. of New York*, No. 17-CV-82, 2018 WL 1406629, at *3 (N.D.N.Y. Mar. 19, 2018).  A plaintiff may sufficiently allege intentional discrimination if she presents "facts showing that a policymaker acted with . . . deliberate indifference to [her] rights."  *Id.* (internal quotation marks omitted).  This standard "does not require personal animosity or ill will," but does require a showing that "an official with authority to address the alleged discrimination and to institute corrective measures on the plaintiff's behalf had actual knowledge of ongoing discrimination against the plaintiff but failed to respond adequately."  *Id.*

Here, Plaintiffs sufficiently allege deliberate indifference to their statutory rights.  After twice receiving inadequate accommodations for their interactions with police, Plaintiffs met with, and sent emails to, Officer Bills.  ECF No. 32 ¶¶ 89, 94.  They expressed their concerns about the ineffective communication, recommended policy changes, and requested that interpreters be provided at future calls.  *See id.* ¶¶ 90, 94.  The second amended complaint plausibly alleges that Plaintiffs' communications to Officer Bills were shared with his supervisor—presumably, a policymaker "with authority to address" these matters.  *Vassenelli*, 2018 WL 1406629, at *3; *see*

*also id.* ¶¶ 89-94. Nevertheless, at the next call, police again provided inadequate accommodations to Plaintiffs to ensure effective communication. *See, e.g.*, ECF No. 32 ¶¶ 120-24. This is sufficient to allege deliberate indifference. *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 276-77 (2d Cir. 2009) (deliberate indifference could reasonably be found where doctor "dismissed [the deaf patient's] demand for an interpreter").

### c. Damages

The Court does agree with the Town's argument that Plaintiffs are barred from recovering emotional-distress damages under the ADA and Rehabilitation Act. ECF No. 24-1 at 23-29. The Second Circuit held as much in the recent case of *Doherty v. Bice*, 101 F.4th, 169 (2d Cir. 2024): "[b]ecause recovery for emotional distress damages is unavailable under the Rehabilitation Act's cause of action, we now hold that such recovery is likewise unavailable under Title II of the ADA, which explicitly borrows the remedies, procedures, and rights of the Rehabilitation Act." *Doherty*, 101 F.4th at 175 (internal quotation marks omitted). Plaintiffs' request for emotional-distress damages under the ADA and Rehabilitation Act is therefore dismissed.[5]

However, the Court declines to dismiss Plaintiffs' request for nominal damages. *See* ECF No. 32 at 27. Contrary to the Town's argument, ECF No. 24-1 at 28-29, "nominal damages are a

---

[5] Plaintiffs suggest that they are under no obligation to articulate a cognizable damages theory at this stage. *See* ECF No. 27 at 19-20. This is unpersuasive, as the *Doherty* court affirmed a district court's decision to address, and dismiss, damages requests on a motion brought under Rule 12(c). *See Doherty*, 101 F.4th at 173-75.

Furthermore, Plaintiffs claim that they are "entitled to compensatory damages under their expectation interest." ECF No. 32 ¶ 167. Some courts have been willing to entertain such a theory, *see, e.g., Ramond v. N.Y.S. Dep't of Corrs. & Cmty. Supervision*, No. 20-CV-1380, 2024 WL 4268385, at *5 (N.D.N.Y. Sept. 19, 2024), but the only injury that Plaintiffs identify in the second amended complaint is emotional distress. *See* ECF No. 32 ¶ 88 (alleging that Plaintiffs became "distress[ed]" during the April 2021 encounter); *id.* ¶ 126 (alleging that the lack of effective communication during the investigation into Scott's suicide caused Plaintiffs "frustration, humiliation, anxiety, and other emotional distress"); *see also id.* ¶ 18. In their opposition memorandum, Plaintiffs posit that they could recover for the "cost of interpreters." ECF No. 27 at 27. This might be a meritorious argument if Plaintiffs had been forced to hire interpreters in order to utilize the Town's police services, but they do not make that allegation. Limiting its analysis to the allegations in the second amended complaint, the Court concludes that Plaintiffs only seek to recover damages for emotional distress, which is barred by *Doherty*. That said, the Court takes no position on whether Plaintiffs may obtain leave to amend should they believe that they can identify a cognizable theory for compensatory damages.

generally accepted remedy in contract actions," and "generally accepted contract remedies" are "appropriate to redress" violations of the ADA and Rehabilitation Act. *Fantasia v. Montefiore New Rochelle*, No. 19-CV-11054, 2022 WL 20540940, at *5 (S.D.N.Y. June 16, 2022); *see also Restatement (Second) of Contracts* § 346 cmt. b (stating that nominal damages are available for breach of contract where, *inter alia*, the only loss is unrecoverable "emotional disturbance" damages); *Nieves v. Plaza Rehab. & Nursing Ctr.*, No. 19-CV-1191, 2023 WL 4763945, at *10 (S.D.N.Y. July 26, 2023) (collecting cases).

### d. Injunctive Relief

The Town contends that Plaintiffs have "fail[ed] to sufficiently allege a threat of future injury, and thus are precluded from seeking injunctive relief." ECF No. 24-1 at 30. Plaintiffs respond, and the Court agrees, that their request for injunctive relief should "proceed to discovery." ECF No. 27 at 27.

To obtain injunctive relief in federal court, a plaintiff "may not rely solely on past injury, but also must establish that she is likely to be harmed again in the future in a similar way." *Costin v. Glens Falls Hosp.*, 103 F.4th 946, 952 (2d Cir. 2024) (internal quotation marks omitted). At the motion-to-dismiss stage, the Second Circuit has held that a complaint is sufficient in this regard when: "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's [interactions] and the proximity of defendants' [operations] to plaintiff[], that plaintiff intended to [make use of defendants' operations in the future]." *Id.*

Considering the allegations in the light most favorable to them, Plaintiffs have plausibly alleged "real and immediate threat of future injury." *Id.* Plaintiffs have alleged past injury: they had three encounters with the Town's police officers in 2021, and in each instance, police failed

to provide statutorily sufficient accommodations to ensure effective communication with them. It is reasonable to infer from this course of events that the Town either maintains noncompliant policies regarding accommodations for deaf individuals, or fails to train its officers on its compliant policies. As such, it is reasonable to conclude that the discriminatory, non-accommodating treatment will continue. Finally, it is reasonable to conclude that Plaintiffs intend to make use of the Town's police services in the future. They live within the jurisdiction of the Town's police, *see* ECF No. 32 ¶ 42, so any emergency situation in which Plaintiffs are involved in the future will likely involve the Brighton Police Department.

The Town's claim that Scott's passing means it is "virtually certain that Plaintiffs will not be subject to the same conduct [by police]" is unconvincing. ECF No. 24-1 at 31. The policies that Plaintiffs seek to enjoin are "not specific" to the police response to Scott's mental health crises. *Costin*, 103 F.4th at 952-53. They are, allegedly, blanket policies that provide ineffective accommodations for deaf individuals. Thus, Plaintiffs will suffer the same problems whenever they seek police assistance—whether to report a crime, seek help after a car accident, or otherwise interact with police. This distinguishes the present facts from the cases on which the Town relies, where a plaintiff was seeking to enjoin particular police practices that only arises in discrete scenarios. *See, e.g.*, *Rapa v. City of New York*, No. 15-CV-1916, 2015 WL 5671987, at *2 (S.D.N.Y. Sept. 25, 2015) (likelihood that deaf plaintiff who did not live in New York City would "find himself arrested against by [NYPD] officers who do not offer him a sign language interpreter" was too "speculative" to confer standing (internal quotation marks and brackets omitted)). Unlike the plaintiffs in those cases, Plaintiffs here are challenging the communication barrier that they will always face when interacting the Town's police. Because Plaintiffs have "plausibly alleged a substantial probability" that they will utilize the Town's police services "*in*

*some capacity*," Plaintiffs have standing to seek injunctive relief. *Costin*, 103 F.4th at 953 (emphasis added); *see also id.* at 952-53 (former patient who suffered discriminatory treatment at hospital during the birth of her child had standing to request injunctive relief, because she sufficiently alleged "that she was likely to return to the Hospital as a patient, [though] not necessarily a pregnant one"); *Brooklyn Ctr. for Independence of the Disabled v. Bloomberg*, 290 F.R.D. 409, 415 (S.D.N.Y. 2012) (concluding that disabled plaintiffs had standing to seek injunctive relief relating to New York City's emergency preparedness plans, despite the fact that it was "not possible to know with certainty if or when disaster will strike the City," because it was "beyond 'mere conjecture' that another disaster, whether natural or manmade, will occur").

Accordingly, Plaintiffs may pursue injunctive relief.

### e. Declaratory Relief

Finally, the Town seeks dismissal of Plaintiffs' request for declaratory relief, on the grounds that it "has not violated the [applicable] statutes, and because [such relief] is entirely duplicative of Plaintiffs' substantive causes of action." ECF No. 24-1 at 20 n.6. The former argument fails because, as stated above, Plaintiffs have stated valid claims for relief. And the Court declines to dismiss Plaintiffs' request based on the latter argument. While some courts have exercised their discretion to dismiss requests for declaratory relief where "other claims in the suit will resolve the same issues," *City of Perry, Iowa v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 286 (S.D.N.Y. 2016), the Court perceives no advantage in addressing the proprietary of declaratory relief at this early stage. The Court will be in a better position to exercise its discretion based on a full evidentiary record after discovery.

## CONCLUSION

For the reasons discussed above, the County's motion to dismiss (ECF No. 33) is DENIED. The Town's motion to dismiss (ECF Nos. 24, 35) is GRANTED IN PART and DENIED IN PART, insofar as Plaintiffs' request for emotional-distress damages under the ADA and Rehabilitation Act is dismissed. The Town's motion is otherwise denied. By November 5, 2024, Plaintiffs shall file a clean version of their second amended complaint that omits the markups. By December 3, 2024, Defendants shall file their answers to the second amended complaint.

IT IS SO ORDERED.

Dated: October 29, 2024
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York